# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER R. FARRAH | ) | |
|                 Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CV 50343 |
| | ) | Magistrate Judge Iain D. Johnston |
| CAROLYN COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|                 Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jennifer R. Farrah ("plaintiff") brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is affirmed.

## BACKGROUND

On September 16, 2009, plaintiff filed applications for disability insurance benefits and supplemental security income. R. 14. She stated that she had been unable to work since January 30, 2009 based on (among other things) her obesity, a right ankle fracture, mild degenerative disc disease, bipolar disorder, and borderline personality disorder.

On July 7, 2011, a hearing was held before an administrative law judge ("ALJ"). R. 36. Plaintiff testified that she was 33 years old, graduated from high school, had just under a year of college education, had a ten-year old daughter, lived with her parents, was taking various medications, and weighed 303 pounds. R. 40-41. She had been seeing a therapist at Janet Wattles Center on a monthly basis over the last year, and every three months checked in with a psychiatrist there, Dr. Jafry, who monitored her medications. R. 42-43. These medications included Abilify, Lorazepam, Trazdone, Wellbutrin, and Trileptal. R. 54-55. When asked how

often she took the medications, plaintiff testified: "I don't need them daily, more just when [] things are getting too heavy for me, [a] little bit stressful." R. 55.

Plaintiff testified that she had worked at a Payless shoe store part-time for a few months, at a Potbelly Sandwich Shop working about 30 hours a week for ten months, at Northern Illinois Blood Bank full-time for at least five months as a technician, and as telemarketer doing cold calling. R. 44-46. She explained that these jobs did not last because she became nervous and paranoid around people and could not handle the stress and would start crying. R. 48.

On August 24, 2011, the ALJ issued a 16-page ruling finding plaintiff not disabled. The ALJ found that plaintiff suffered from several severe impairments, including morbid obesity, right ankle fracture, mild degenerative disc disease, bipolar disorder, and a borderline personality disorder. R. 17. The ALJ rejected plaintiff's claim that her fibromyalgia, right elbow pain, multiple personality disorder, or posttraumatic stress disorder qualified as severe impairments. R. 17-18. The ALJ found that plaintiff's polysubstance abuse had been in remission because, according to her testimony, she stopped smoking cannabis in April 2010, stopped using crack cocaine in 2008, and consumed no alcohol in the months leading up to the hearing. R. 18.

In considering whether plaintiff's mental impairments met any of the Section 12 listings—specifically 12.04, 12.06, and 12.08—the ALJ analyzed the paragraph B criteria. The ALJ found that plaintiff had no more than a mild restriction in her activities of daily living and that she had no more than moderate difficulties in social functioning and in her concentration, persistence, or pace. R. 18-19.

The ALJ concluded that plaintiff had a residual functional capacity ("RFC") to perform light work except that she could perform no more than unskilled and routine work; her work

must stay the same from day-to-day; she could have no frequent interaction with others; and she could not perform work requiring team coordination or public contact. R. 20.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Plaintiff raises four arguments, which are analyzed individually below. These arguments focus on her alleged mental impairments. She has not challenged the ALJ's analysis of her physical impairments.

**I.	Whether A Medical Expert Should Have Been Called.**

Plaintiff asserts that the ALJ should have called a medical expert at the administrative hearing to assess plaintiff's RFC. Plaintiff argues generally that the ALJ "invaded the medical province" when analyzing the evidence. Dkt. #14 at p. 6.

However, plaintiff fails to provide any specific analysis of how the ALJ supposedly invaded the medical province. Instead, she engages in a cut-and-paste strategy, quoting extensive portions of the ALJ's opinion. Specifically, over several pages, she lists one long quote after another. Dkt. # 14 at pp. 6-9. Although the quotations come from pages 19, 20, 21, 23, 25, and 26 of the ALJ's opinion, they are listed back-to-back. After this string of quotes, plaintiff then cursorily states in four vague sentences that the ALJ should have called a medical expert. She also cites four cases but does not discuss them. Plaintiff does not cite to the record and does not explain to this Court specifically what the ALJ did wrong and how specific evidence supports plaintiff's argument. For example, in one of her few attempts to make a sustained argument, plaintiff states (without citing a case) that "[t]he nature of manic, or bi-polar depression is well known to include symptomology of going off and an [sic] medications during the high or low phases of the illness." Dkt. # 14 at p.9. Although this is a valid general observation, one for which plaintiff could find a case to support, *see, e.g., Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006), plaintiff does not complete the argument by discussing or citing the specific facts of this case, nor does she address the ALJ's specific statements and how they fit into the many other reasons provided for the decision. Indeed, by failing to cite to medical evidence generally, and medical opinions specifically, plaintiff is, herself, "playing doctor."

Accordingly, the Court finds that this argument is undeveloped and therefore waived. *See, e.g., Baker v. Colvin*, 2015 WL 719604, *4 (N.D. Ill. Feb. 18, 2015) (plaintiff's "unfocused" and "undeveloped" arguments, which rely on "passing references" to legal rules "without providing any substantive support," are deemed waived); *Janusz v. Colvin*, 2015 WL 859497, *4 (N.D. Ill. Feb. 26, 2015) (rejecting plaintiff's argument because it was perfunctory, only offered "sporadic citation" to the medical evidence, and provided no "explanation of how this evidence undercuts the ALJ's findings"); *Johnson v. Astrue*, 2010 WL 1190123, *6 (S.D. Ind. Mar. 22, 2010) (plaintiff waived argument by providing "only a string of block quotes from medical records [that was] devoid of any legal analysis"). The Court reminds plaintiff (more specifically, her counsel) that it is plaintiff – not the ALJ – who bears the burden of establishing that she is disabled. *See Liskowitz v. Astrue,* 559 F.3d 736, 739-40 (7th Cir. 2009). The record in this case is 670 pages, and there are many medical reports. It is not this Court's job to dig through this record to make arguments for plaintiff. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.").

**II.     Plaintiff's Activities of Daily Living.**

The Court finds that plaintiff's second argument is waived because it is also undeveloped. Plaintiff's "argument" consists of the following sentence in her opening brief: "There was an incorrect correlation of the Plaintiff's household activities to her ability to work." Dkt. #14 at 9. It is listed as a heading only, with no argument to follow. In her third argument, analyzed below, plaintiff states that the second argument "[a]ctually . . . goes hand in hand" with the third argument. However, reading the third argument, this point is not obvious. There is only the following sentence: "The cases in the 7th Circuit are numerous as to the finding of lack of

substantial evidence for a denial where household activities (partially here, on an intermittent basis) are used by the ALJ to equal the ability to work eight hours per day at five days per week." *Id.* at 10. No cases are cited after this sentence, and the brief then shifts to the third argument. Earlier, in the fact section of this same brief, plaintiff states: "The ALJ repeatedly equated performance of household chores and activities (which, as he admits, her abilities in this area varied greatly) with the ability to work within his formulated functional capacity." *Id.* at 4. Again, this sentence sits by itself, undeveloped, with no cases or discussion of the record.

This argument is too open-ended and amorphous for this Court to meaningfully evaluate. As noted above, the record is long; the ALJ's opinion is also long (16 pages) with many arguments. The ALJ discussed the activities of daily living in three separate places. *See* R. 18-19, 21, and 25. At the same time, as the government correctly points out, the ALJ's recounting of plaintiff's daily activities was just a portion of the analysis. Dkt. # 17 at p. 9. Plaintiff fails to support her bald assertions with specific facts and arguments. The three sentences above, which constitute the entirety of plaintiff's argument, contain only a few abstract phrases, such as the assertion that plaintiff's "abilities in this area varied greatly" and were "intermittent." Untethered to any facts, these vague references could refer to a large group of people. The details matter. An ALJ clearly may consider activities of daily living in assessing whether plaintiff is disabled. *See, e.g., Flint v. Colvin*, 543 Fed. Appx. 598, 600 (7th Cir. 2013) (the ALJ "properly noted the inconsistency between, on the one hand, [claimant's] testimony that she was able to care full-time for her husband and perform some household chores and, on the other hand, her claim that her pain and other symptoms prevented her from working"). In fact, regulations specifically authorize an ALJ to consider daily activities to evaluate a claimant's credibility. 20 C.F.R. §404.1529(c)(3)(i). It is also true that the ALJ should utilize care when assessing the

claimant's activities of daily living. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility [but] this must be done with care"). But merely citing to this general principle is not enough to sufficiently develop an argument. For these reasons, the Court finds that plaintiff's second argument is waived.

### III. Hypothetical Question To The Vocational Expert.

In her third argument, plaintiff asserts that the ALJ "failed to ask the vocational expert about 'moderate' limitations in concentration, persistence, or pace, instead of substituting insufficient – boilerplate language." Dkt. # 14 at p. 9. Plaintiff relies on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), where the Seventh Circuit held that, in "most cases," "employing terms like 'simple repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* at 620.

This Court does not find that *O'Connor-Spinner* is applicable here because the ALJ did not find that plaintiff had "significant problems" in the area of concentration, persistence, and pace. It is true that the ALJ stated in the step three listing analysis that plaintiff had "no more than moderate difficulties" in this category. R. 19. However, later in the opinion, in the step four analysis, the ALJ concluded that plaintiff's specific limitations correlated to "routine work that stays the same day-to-day, signifying no frequent interaction, no team coordination and no public

contact."[1] R. 26. These specific limitations are the same as those that were given in the hypothetical to the vocational expert at the administrative hearing. *Cf.* R. 64 to R. 20 & 26.

Unlike in *O'Connor-Spinner*, the ALJ here did not find in the step four RFC analysis that plaintiff had moderate limitations in this category, and so there is no contradiction or deficiency in the hypothetical posed to the vocational expert. *See Allbritten v. Astrue*, 2012 WL 243566, *7 (N.D. Ind. Jan. 25, 2012) (distinguishing *O'Connor-Spinner* because "the hypothetical question was entirely consistent with the ALJ's RFC finding" even though the ALJ "did find, earlier in the decision, that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, but that finding was made [] at step three, [] and the evaluation at step three is separate from the evaluation of RFC"); *Packham v. Astrue*, 762 F.Supp.2d 1094, 1105 (N.D. Ill. 2011) (the rule in *O'Connor-Spinner* did not apply because "[c]laimant does not contend that the ALJ unfairly characterized her RFC finding when stating the hypothetical" but instead "essentially rehashes his disagreement with the RFC finding itself"). In this third argument, plaintiff has not attacked the substance of the ALJ's RFC assessment regarding her limitations in the category of concentration, persistence, and pace. For these reasons, this argument does not justify a remand.

**IV.    Listing 12.08 and Borderline Personality Disorder.**

In her fourth argument, plaintiff asserts that the ALJ provided "insufficient discussion" for his finding that plaintiff did not meet listing 12.08 relating to her diagnosis of borderline personality disorder. Dkt. # 14 at p. 11.[2] Plaintiff only identifies one piece of evidence that she believes the ALJ should have discussed more thoroughly. It is a three-page report issued by

---

[1] In reaching this conclusion, the ALJ relied on the state agency medical consultant, Lionel Hudspeth, who concluded in his Mental Residual Functional Capacity Assessment that plaintiff "would be best served by having work assignments requiring no contact with the public and minimal contact with coworker[s] and supervisor[s]." R. 330.

[2] This assertion is reminiscent of the pot calling the kettle black.

Gerald K. Hoffman, a consultative examiner who interviewed plaintiff in 2010. Plaintiff specifically relies on the following diagnosis by Dr. Hoffman:

> AXIS II   Borderline Personality Disorder. Symptoms have been present since childhood, more intensified beginning in early teens, presenting as an enduring pattern of experience and behavior that deviates markedly from the expectations of our culture. Meets criteria regarding labile and inappropriate affect, poor impulse control, poor interpersonal functioning due to lack of trust.

Dkt. # 14 at pp. 11-12; R. 308. After quoting the above section of the report, plaintiff then makes the following assertion : "Under [Dr. Hoffman's] Axis II diagnosis of borderline personality disorder, the use of the wounds [sic] 'meets criteria' logically implies that the Plaintiff meets the Listings at Section 12.08 by language in the DSM-IV psychiatric manual that correlates to that section." Dkt. # 14 at p.12. This is plaintiff's entire argument.[3]

Once again, this Court finds that by failing to develop this argument, plaintiff has waived it. As an initial observation, the Court notes that it hard to make a winning argument in one, cryptic sentence. The sentence implies that Dr. Hoffman had concluded that plaintiff met the criteria for Listing 12.08. However, upon closer inspection, plaintiff is only claiming that Dr. Hoffman concluded that plaintiff met the DSM-IV criteria for borderline personality disorder. Plaintiff then conclusorily asserts that such a diagnosis "logically implies" that plaintiff also meets the criteria for Listing 12.08.

Plaintiff's assertion essentially boils down to the contention that there is a *per se* rule that if a doctor diagnoses a plaintiff with borderline personality disorder, then the plaintiff automatically qualifies as disabled under Listing 12.08. However, plaintiff has cited no case or other authority to support this proposition, and this Court is aware of none. In fact, the case law shows that it is not uncommon for a claimant to be diagnosed with borderline personality

---

[3] There is one more sentence after this one, but it focuses on the issue of hypotheticals given to the vocational expert, which appears to relate to plaintiff's third argument.

disorder but then to be found not disabled. *See, e.g.*, *Pittman v. Colvin*, 2015 WL 179771, *5-6 (S.D. Ind. Jan. 13, 2015) (although the ALJ found that plaintiff had the severe impairment of borderline personality disorder, the ALJ found that she was not disabled); *Allen v. Astrue*, 2010 WL 2836813, *2 (C.D. Ill. July 16 2010) (plaintiff was diagnosed with borderline personality disorder, but the ALJ found that she did not meet any listings and that she was not disabled); *Nicholl v. Astrue*, 2010 WL 685899, *6 (C.D. Ill. Feb. 22, 2010) (same).

Other than simply pointing to the diagnosis of borderline personality disorder, plaintiff does not otherwise engage with any of the evidence in the record. She does not discuss any of the specific observations in the Hoffman report, nor does she try to connect those observations back to the many specific requirements that must be met to qualify under Listing 12.08. Among other things, plaintiff has to show that she has marked restrictions in two of the four paragraph B criteria. Before the ALJ, plaintiff only made arguments about two categories: "social interaction" and "concentration, persistence, or pace." *See* R. 275. The ALJ found that she had "no more than" moderate restrictions in these two areas.

It is not self-evident to this Court how Dr. Hoffman's report leads to a finding that plaintiff had marked restrictions in both of these categories. Based on this Court's review of the report, Dr. Hoffman believed that plaintiff's problems were primarily related to her social interactions. As to her ability to concentrate, he stated: "She can think, reason, and respond in a logical, coherent, and prompt manner." R. 306. He also found that she had no problems with her short or long term memory. R. 307. These observations suggest that Dr. Hoffman did not believe plaintiff had a marked restriction in the area of concentration, persistence, and pace. Similarly, at the hearing, plaintiff testified as follows when asked why she was not able to stay in the jobs she obtained: "as soon as I get in there and *I get around the people*, I get very paranoid and

nervous." R. 48 (emphasis added). This testimony also appears to focus on her limitations in the area of social interaction. Therefore, these facts suggest that Dr. Hoffman's report, at best, would be relevant to only one of the two paragraph B categories.

In any event, it is worth noting that the ALJ relied on observations from Dr. Hoffman's report (referred to as Exhibit 3F) to support his conclusions that plaintiff did not meet the paragraph B criteria. In fact, the ALJ cited to the Hoffman report three times. *See* R. 19. Thus, contrary to the impression created by plaintiff, the ALJ carefully considered this report and ultimately disagreed with plaintiff about its meaning. Not only does plaintiff fail to discuss any of the specifics of the Hoffman report, she also does not discuss any of the other medical evidence in the record, such as the observations of Dr. Jafry, the psychiatrist she saw at the Janet Wattles Center.

## CONCLUSION

For the reasons given, plaintiff's motion for summary judgment is denied, the government's motion is granted, and the decision of the ALJ is affirmed.

Date: March 16, 2015   By: _____
　　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　　United States Magistrate Judge